Ex. 4

Under the Federal Mediation and Conciliation Association

| International Brotherhood of Teamsters Local Union No. 20 Union and Johns Manville; Employer | Case Number: 200928-10433 Grievant - George Casiano Issue: #01-20-27; Language - Seniority Betty R. Widgeon, Arbitrator |
|---|---|

**Appearances**

**For the Union**
John R. Doll
DOLL, JANSEN & FORD
111 W. FIRST ST., SUITE 1100
DAYTON, OHIO 45402-1156
(937) 461-5310
jdoll@djflawfirm.com

**For the Employer**
Meghan Anderson Roth (0082165)
MARSHALL & MELHORN, LLC
Four SeaGate, Eighth Floor
Toledo, Ohio 43604
(410) 249–7100
roth@marshall-melhorn.com

Date of Hearing: March 11, 2021
Location of Hearing: Via ZOOM video platform
Post Hearing Briefs Received: By May 20, 2021
Decision Due: July 20, 2021
Decision Submitted: July 26, 2021
Pertinent Contract Provisions: Article IV Seniority

**Issue**

Did the Company violate the parties' Collective Bargaining Agreement by failing to honor the Department Seniority Assignment of Work in the Direct Melt Department beginning in August, 2020; If so, what shall the remedy be?

**Decision Summary**

Having considered all of the evidence produced by both parties, the Arbitrator found that the Company's conduct does not violate a reasonable reading of the plain language of the contract. Additionally, the record does not support a finding of a past practice of disregarding the contract language in favor of a practice of assigning Utility Operator tasks based on seniority. Therefore, the Arbitrator finds that the Union failed to carry its burden of proving a violation of the contract by the preponderance of the evidence. The grievance is **DENIED**. A brief Background and the Arbitrator's Analysis begin on page 2.

**Background**

Johns Manville ("the Company") is a corporation with approximately 8,000 employees that has three different manufacturing divisions: roofing, insulation, and engineered products. The Waterville, Ohio facility is part of the engineered products division. The Waterville facility operates in two different areas: reinforcement and filtration. George Casiano ("Grievant") works in the Direct Melt department of Plant 1. There are various job classifications within the department including the following: Furnace Tender, Material Tender, Chop Pack Operator, High Performance Operator, Production Attendant, Utility Worker, and Utility Operator ("UO"). The purpose of the UO job classification in Direct Melt is to fill certain other job positions when those positions are open because an employee has called off for the day or left early. The UOs also perform certain clean up tasks. The job description of the UO position explains that UOs "fill and perform the duties of Brushing Tender, Chop Pak Operator, Winder Operator, Production Attendant, or Utility Worker as directed by a supervisor." Grievant has worked as a UO for 6 years.

There are four shifts at the Waterville facility: B, C, D, and X. Before August of 2020, there were two UOs on each shift, and Grievant worked on D shift. The supervisors would assign the job tasks to each UO for the day, after which point, the two UOs would often decide between themselves who would do each task. In July or August 2020, the Company determined that there was a need to add an additional UO to each shift. Supervisors continued to assign tasks to each UO, but, before August, 2020, there were inconsistencies in the ways various Supervisors assigned work. In August of 2021, Complex Production Superintendent Jane Mason ("Mason"), in collaboration with the Supervisors, formulated a rotation system in which UOs are sequentially assigned to open job assignments. On August 13, 2020, the Teamsters Local 20

2

("the Union") filed the underlying grievance alleging that the Company failed to follow the seniority procedure of the CBA when assigning tasks to Grievant using the rotation system instead of making assignments according to seniority.

The case progressed through the steps below without the parties reaching agreement. The undersigned Arbitrator was appointed on October 20, 2020 to decide the matter. The Arbitrator and Counsel scheduled a case management conference for Tuesday, November 10, 2020. That conference was rescheduled to November 16, 2020 to accommodate schedules. The arbitration hearing was held on March 11, 2021. The parties were represented by competent Counsel who confirmed that the matter was properly before the Arbitrator. Each side had the opportunity to give opening statements, present witnesses, cross-examine the other side's witnesses, and submit exhibits and post hearing briefs. The matter is now ready for Decision and Award.

**Positions of the Parties**

*The Union*

The Union's position is that, before the August 2020 change, the Company followed a seniority system of assigning UO tasks and that the implementation of the new sequential assignment system violates Grievant's contractual rights. Specifically, it alleges that the language of Article IV– Seniority applies to the underlying circumstances because in the clause "seniority...where applicable shall be the determining factor in matters affecting layoff, recall, transfer or promotion," the assignment of job duties should be considered to fall within the definitions of either "transfer" or "promotion."

*The Company*

The Company's position is that the assignments of job descriptions in question falls under the Company's broad Article 3 discretion. It points out that the assignments being grieved are not

3

covered by any of the Contract provisions cited by the Union. The Company asserts that Article VIII Section 44(a) applies only to situations in which there is a vacancy for more than a week. Conversely, doing different job tasks on different days as assigned is in the job description of the UO, and such an assignment never amounts to a transfer or a promotion.

**Analysis**

Because this is a contract interpretation case, the burden of proof rests with the Union. The Union's best argument is that the assignments grieved fall under the a reasonable interpretation of the dictionary definition of either "transfer" or "promotion." The Arbitrator agrees with the Union that the provision cited is clear and unambiguous but does not agree with the Union's conclusion that the underlying action by the Company falls within the scope of the language of Article VI. The undisputed facts in the record establish that the tasks being assigned to the UOs were assignments already within the scope of their job description. For this reason, the assignment of these tasks would not constitute either a "transfer" or a "promotion" based on the plain reading of the contract language.

The Union referenced in documentation before the Arbitration hearing — but did not bring up in the hearing or in the post-hearing brief — Article VIII. However, as the Company pointed out, that Article applies to job transfers with a duration of a week or more and, so it does not apply to the daily assignments of UO tasks.

The Arbitrator does not find the existence of a past practice of assigning daily UO tasks based on seniority. However, the record supports that the Company did not actually use seniority in the assignment of the tasks before the implementation of the new assignment system. Instead, it appears that the Company divided the tasks between the two UOs that were already assigned to the shift, and the two UOs divided the tasks among themselves. If the UO's subdivision of these

4

tasks was done according to seniority between the two of them – and it appears that it might have been – that fact does not form the basis for a past practice by the Company of assigning those tasks based on seniority.

In summary, the aggrieved conduct does not violate a reasonable reading of the plain language of the contract. Additionally, the record does not support a finding of a past practice of disregarding the contract language in favor of a practice of assigning UO tasks based on seniority. For these reasons, the grievance is **DENIED** in its entirety.

_____  _____
**Betty R. Widgeon**              July 26, 2021