conduct by counsel nor is their prior testimony to be misrepresented in cross-examination. ... [B]adgering or belittling a witness ... is contrary to good practice. Such behavior can also lose the respect of the arbitrator."[124]

### *iii. Order of Presenting Case*

Generally speaking, the party asserting a claim presents its case first. This order is usually reversed in discipline cases, because the company has the burden of proving wrongdoing by the employee.[125] In other types of cases, such as promotion, transfer, and contracting-out, the facts may be developed in a more orderly way if the employer presents its case first, because it is in possession of the necessary information. Nevertheless, the union still has the burden of proof in these cases.[126]

Arbitrators differ on whether to allow the grievant in a discipline case to be called as a witness by the employer.[127] Some arbitrators believe that the employer must prove its case with evidence other than the grievant's testimony. A survey by the National Academy of Arbitrators (NAA) found that a large majority of the responding members would permit the company to call a union member as its first witness in the discharge case over the union's objection, and a somewhat smaller majority would permit the company to call the grievant. Most of the responding members said if they did not permit the company to call a union member as its first witness, they would allow a supervisor to testify as to what the member told him concerning the discharge incident.[128]

---

[124]Kagel, *Practice and Procedure,* in THE COMMON LAW OF THE WORKPLACE: THE VIEWS OF ARBITRATORS, 27 (St. Antoine ed., BNA Books 2d ed. 2005).

[125]AAA Rule 26 provides:

> The Arbitrator may vary the normal procedure under which the initiating party first presents its claim, but in any case shall afford full and equal opportunity to all parties for the presentation of relevant proofs.

[126]*See* Rohm & Haas Tex., 91 LA 339 (McDermott, 1988); Bethlehem Steel Corp., 91 LA 293 (McDermott, 1988). *See also* Douglas Aircraft Co., 28 LA 198, 202–03 (Jones, Jr., 1957); Armstrong Cork Co., 18 LA 651, 651 (Pigors, 1952). *But see* Latrobe Steel Co., 38 LA 729, 734 (Wood, 1962); Sealtest Dairy Prods. Co., 35 LA 205, 208–09 (Morvant, 1960).

[127]*See* Chapter 8, section 4.G., "Use of Adverse Witnesses."

[128]*Procedural Problems During Hearings*, THE CHRONICLE (NAA), Apr. 1981, at 1, 6. "154 members would overrule the objection and only 19 would sustain it. Another 50 members were ambivalent." *Id.* Many of those who would overrule the objection explained that "arbitration is a civil matter and either side may call as a witness anyone they please." As to the grievant, "63 members would sustain the Union's objection if the grievant were called as the first witness, 115 would overrule the objection, and 44 would rule according to the circumstances. Those who refuse to permit the grievant (or a Union member in some cases) to be called as the first witness reason, primarily, that the Company has the obligation to establish at least a *prima facie* case through its own witnesses." *Id.* Discussion of this issue in the NAA's "Maillist" reflects continued division among arbitrators. *Heard on the E-Street*, THE CHRONICLE (NAA), Oct. 2002, at 14. Several arbitrators expressed discomfort with the practice but, ultimately, would allow it. One noted that "I find that the tactic is usually used by incompetent but aggressive management lawyers." *Id.* Many arbitrators have

nature of judicial admissions may be held by arbitrators to be weighty evidence against the party making them.[211] Thus, where a party assumed a position in an arbitration case that was inconsistent with the position of that party in a prior arbitration case involving the same contract clause, the position taken in the prior case was one of the reasons for a decision against the party in the subsequent case.[212]

While the record of proceedings before a state workers' compensation commission was ruled inadmissible in a subsequent arbitration hearing as to the employee's capability of performing the job, the arbitrator nevertheless permitted statements made by the employee in the compensation proceedings to be used by the employer at the arbitration hearing for purposes of impeaching the employee as a witness.[213]

Testimony from other proceedings must be evaluated with special care and in the full setting of the prior proceeding. Moreover, one arbitrator observed that sometimes even in the same case an apparently damaging admission by a witness will have resulted from a momentary confusion, and that the arbitrator should exercise care not to overemphasize any single item of testimony, especially if it is inconsistent with other testimony of the witness and with the rest of the party's case.[214]

## G. Use of Adverse Witnesses [LA CDI 94.60519]

Except for the following limitation, it appears accepted that the arbitrator should not limit the right of parties to call witnesses from the other side.[215] The common limitation on the right to call witnesses

---

[211] *See, e.g.*, Commercial Filters Div., 91 LA 25 (Bethel, 1988); Mor-Flo Indus., Inc., 89 LA 762 (King, 1987); Herlitz, Inc., 89 LA 436 (Allen, Jr., 1987); Trew-Craft Corp., 87 LA 1113 (Kanner, 1986).

[212] Goodyear Tire & Rubber Co. of Ala., 6 LA 681, 684 (McCoy, 1947). The prior case was heard by the same arbitrator. Goodyear Tire & Rubber Co., 4 LA 231 (McCoy, 1946). *See also* Los Angeles County Dep't of Pub. Soc. Servs., 93 LA 164 (Knowlton, 1988); Apex Ready-Mix Concrete Co., 58 LA 1111, 1116 (Kates, 1972) (a term used by a party was "construed as a declaration against interest" and was given weight against the party in the same case).

[213] Vulcan Mold & Iron Co., 42 LA 734, 736–37, 739 (Sembower, 1964). In *St. Joe Minerals Corp.*, 70 LA 1110, 1114 (Roberts, 1978), admissions against interest made in unemployment compensation proceedings were similarly admissible in arbitration for impeachment purposes.

[214] General Elec. Corp., 16 LA 554, 559 (Willcox, 1951).

[215] See results of a 1981 survey by the NAA noted in Chapter 7, section 4.G.iii., "Order of Presenting Case"; *Chicago Area Report*, *supra* note 90, at 99; *Pittsburgh Report*, *supra* note 2, at 258; *New York Report Workshop*, *supra* note 81, at 324. However, it has been suggested that the calling of witnesses from the other side should not be encouraged. *Chicago Area Report*, at 99. As a matter of policy, some companies never call bargaining-unit members as witnesses. *West Coast Report Workshop*, *supra* note 81, at 233; *New York Report Workshop*, at 328. However, a party making no effort to call a person to testify might have little standing to complain that the other party failed to use the person as a witness. F.M. Stamper Co., 51 LA 533, 537 (Eaton, 1968). In *Jaeger Machine Co.*, 55 LA 850, 852 (High, 1970), inferences adverse to the union's case were created when the union refused to permit its representative to testify when the employer attempted to call him as a witness.

from the other side concerns management's right to call the grievant as its first witness in discharge or disciplinary actions.[216] There is a division of opinion as to whether the company should have the right to call the grievant as a witness.[217]

Advocates for unions contend that an arbitrator who permits this practice is, in essence, allowing management to circumvent the rule that the employer must present its case first in matters involving discipline and discharge. The facts surrounding the employer's decision to discipline or discharge are within the employer's knowledge, and, considering the employer's advantage of access to personnel records and of initial disciplinary power, it is only equitable for the employer to present its entire case before the grievant is required to testify. This procedure is not designed to exempt the grievant from testifying, but rather is an attempt to ensure a fair hearing. Should the union attempt to close its case without calling the grievant, the arbitrator does have the authority to require the grievant's testimony, unless there are special circumstances that might involve criminal self-incrimination, trade secrets, or classified defense matters involving the grievant. Only in the rare cases in which the arbitrator requires the union to testify first should a grievant's testimony precede management's testimony.[218]

---

[216]Rohm & Haas Tex., 91 LA 339, 343 (McDermott, 1988) (arbitrator refused to allow grievant to be called as employer's first witness in a hearing regarding a discharge for excessive absenteeism, because employer had the burden of presenting its case and would have ample opportunity to cross-examine grievant); City of San Antonio, Tex., 90 LA 159, 162 (Williams, 1987) (arbitrator required employer to make a prima facie case regarding its disciplinary charges before allowing it to call grievant as a witness and found that the criminal law restrictions against self-incrimination do not apply in labor arbitration). *See generally* BORNSTEIN & GOSLINE, LABOR AND EMPLOYMENT ARBITRATION §4.03[1][a][i][B] (1989); GRENIG & ESTES, LABOR ARBITRATION ADVOCACY 85 (1989); HILL & SINICROPI, EVIDENCE IN ARBITRATION 273–78 (BNA Books 2d ed. 1987); LEVIN & GRODY, WITNESSES IN ARBITRATION: SELECTION, PREPARATION, AND PRESENTATION 123–25 (BNA Books 1987); *Procedural Rulings During the Hearing*, in ARBITRATION 1982: CONDUCT OF THE HEARING, PROCEEDINGS OF THE 35TH ANNUAL MEETING OF NAA 138 (Stern & Dennis eds., BNA Books 1983).

[217]*See, e.g.*, City of San Antonio, Tex., 90 LA 159 (compelling grievant to testify at arbitration hearing challenging his suspension did not violate privilege against self-incrimination because arbitration is not a criminal proceeding and procedural fairness was satisfied by requiring the employer to make a prima facie case before allowing it to call grievant). See also results of a 1981 survey by the NAA noted in Chapter 7, section 4.G.iii., "Order of Presenting Case"; *West Coast Report*, *supra* note 2, at 201–02; *West Coast Report Workshop*, *supra* note 81, at 228–29; *Pittsburgh Report*, *supra* note 2, at 258; *New York Report*, *supra* note 2, at 324–25. See also panel discussion, *Procedural Problems in the Conduct of Arbitration Hearings: A Discussion*, in LABOR ARBITRATION: PERSPECTIVES AND PROBLEMS, PROCEEDINGS OF THE 17TH ANNUAL MEETING OF NAA 1, 27 (Kahn ed., BNA Books 1964). For related material, see section 4.H., "Failure of Grievant to Testify," below, and Chapter 7, section 4.G.iii., "Order of Presenting Case."

[218]*See* Aaron, *The Role of the Arbitrator in Ensuring a Fair Hearing*, in ARBITRATION 1982: CONDUCT OF THE HEARING, PROCEEDINGS OF THE 35TH ANNUAL MEETING OF NAA 30 (Stern & Dennis eds., BNA Books 1983). *But see* St. Marie's Gopher News, 93 LA 738 (Eisele, 1989) (despite strong union objection, company was allowed to call grievant as its first witness because this arbitrator, in his experience, had found that such allowance had not materially affected the outcome of the case).

Case: 3:21-cv-02030-JGC Doc #: 1-5 Filed: 10/26/21 4 of 6. PageID #: 88



In *Chicago Transit Authority*,[219] the arbitrator allowed the employer to call the discharged grievant as a witness after the union reversed its previously announced decision to call the grievant as part of its case and announced it did not intend to call him. The arbitrator noted that the employer could not call the grievant as the first witness, but "it is permissible for an employer to call the grievant as a witness later if the union has not done so."[220]

The question has been raised as to whether a party calls an adverse witness at its peril; opinion differs as to how strictly such party should be held bound by the testimony of an adverse witness.[221]

A related aspect is involved in the following question included in a survey of its members by the NAA: "The testimony is clear that there is a witness in regard to an important controverted fact but, upon your inquiry, neither party intends to call that witness. What would you do?"[222]

Not surprisingly, the responses indicated a division of opinion. Those members

> who hold the view that it is the obligation of the parties to present the evidence and the role of the arbitrator to decide the issue upon the facts presented will take no action. Those members who believe that a full and fair hearing depends upon the presentation of all evidence will take some action ranging from calling the witness to discussing the matter with the parties.[223]

---

[219] 135 LA 1485 (Woolf, 2015).

[220] *Id.* at 1486.

[221] See panel discussion, *Procedural Problems*, NAA 17TH PROCEEDINGS, at 28 ("Ordinarily, a party may not impeach its own witness through his own testimony, except where he is a hostile witness or his testimony can be shown to constitute surprise."); *New York Report*, *supra* note 2, at 302 ("A hostile witness is one who manifests so much hostility or prejudice under examination that the party who has called him is allowed to cross-examine him, i.e., to treat him as though he had been called by the opposite party."). In *A-T-O, Inc.*, 72 LA 408, 410 (Shister, 1979), the arbitrator refused to permit the union to impugn the credibility of a company official it had called as a witness. Conversely, the testimony of an employer's official who testified pursuant to subpoena was "especially persuasive" on an arbitrator where it supported the union's case. Hempstead Pub. Sch. Bd. of Educ., 69 LA 808, 809, 811 (Gootnick, 1977).

[222] *Procedural Problems During Hearings*, THE CHRONICLE (NAA), Apr. 1981, at 6.

[223] *Id.* at 6–7, where the following details are reported:

> Eighty-one members would not take any action whatsoever; another six would do nothing unless there was a due process question or problem, and another six members would call the witness only if it appeared that the case would turn on this testimony. Twenty members would call the witness on their own motion. Another 24 members might call the witness depending on the circumstances; that is, they would determine if there is a valid reason why the party does not wish to call the witness. The remaining members would take a variety of actions such as discussing the matter with the parties and urging that the witness be called or warning the parties that the testimony is crucial and noting what inference could be drawn by the failure of the witness to testify. However, these members would leave to the party the final decision as to whether the witness should be called.

*Id.* at 6.

how frequently each of these standards is applied. Generally, in more straightforward cases involving normal work rules, such as attendance policies, arbitrators will use the preponderance of the evidence standard.[11] Some arbitrators use a heightened standard when charges involve behavior that could be criminal or demonstrate moral turpitude. For example, arbitrators have applied the clear and convincing standard in cases involving falsification,[12] workplace violence,[13] dishonesty,[14] theft,[15] or similar conduct.[16] In so doing, arbitrators cite the effect upon future employment that such an action will have.[17]

Adoption of the beyond a reasonable doubt standard is rare. One arbitrator opined that this standard is not appropriate for labor–management arbitration because of the differences between a criminal trial and a labor arbitration. He noted that the rules of criminal procedure are highly technical and adopted for reasons of liberty and not industrial justice. He also commented that arbitrators, labor lawyers, and other labor advocates are not experts in the criminal law and, therefore, the clear and convincing standard provides a balance between the need for a high standard of proof and the goals of labor arbitration.[18]

## B. Calling the Grievant as an Adverse Witness

The approach arbitrators take to procedural issues is far less structured than in a court of law. In a discharge or discipline case where no supervisor is a party or witness to the underlying circumstances, the employer often calls the grievant as its first witness. Unions argue that this tactic is an inappropriate effort by the employer to circumvent its burden of proof. There is marked disagreement among the arbitrators and commentators on this issue.[19]

---

[11] Bowater, Inc., 123 LA 673 (Kilroy, 2007) (employer must prove absenteeism charges by preponderance of evidence); Shawnee Cnty., 123 LA 1659 (Daly, 2007) (charges of falsifying absence statement not proven by preponderance of evidence). *See also* Total Maint. Mgmt., 133 LA 766 (Wood, 2014); Pacific Cnty., 132 LA 261 (Coss, 2013); Salem-Keizer Sch. Dist., 128 LA 1404 (Reeves, 2011).

[12] Clearwater Paper Corp., 132 LA 465 (Gaba, 2013); Miami-Dade Cnty., 131 LA 287, 298 (Hoffman, 2012); Embarq, 123 LA 923 (Armendariz, 2007); ATC/VanCom, 121 LA 1501 (Armendariz, 2005).

[13] Clearn Harbors Deer Park, 131 LA 1523 (Shieber, 2013); Century Link, 131 LA 1030 (Oberdank, 2013); Westin Hotels, 131 LA 1072 (Goldberg, 2012); Providence St. Peter Hosp., 123 LA 473 (Gaba, 2006); Metropolitan Transit Auth., 122 LA 945 (Baroni, 2006).

[14] City of Oakland, 128 LA 231 (Landau, 2010); United Parcel Serv., 121 LA 207 (Wolff, 2005).

[15] City of Fort Worth, 123 LA 1125 (Moore, 2007).

[16] City of Okla., 123 LA 24 (Walker, 2006) (city's burden of proving that it had cause to discharge police officer for allegedly having sex with prostitutes was clear and convincing evidence); Hayes-Albion, 117 LA 1177 (Allen, 2002) (clear and convincing standard applicable to grievance involving allegations of drug activity in workplace).

[17] Albertson's, LLC, 123 LA 1349 (McCurdy, 2007) (clear and convincing standard should be applied to case involving allegations of unauthorized possession of store merchandise).

[18] *Id.*

[19] PROBLEMS OF PROOF IN ARBITRATION, PROCEEDINGS OF THE 19TH ANNUAL MEETING OF THE NAA, 99 (Jones ed., BNA Books 1967). *See also* "Procedural Rulings During the Hearing: V. Witnesses From Opposing Sides; VI. Medical Affidavits," ARBITRATION 1982: CONDUCT OF THE HEARING,

At the 19th annual meeting of the NAA, a Chicago-area tripartite committee concluded that it is generally unwise and undesirable to encourage calling witnesses from the opposition except in unusual cases, as where the grievant knows best what happened. Otherwise, the arbitrator should rule that the grievant may not be called to testify at the outset of a discharge or discipline matter.[20]

A New York tripartite committee reporting to the same NAA meeting reached a different conclusion. It found it permissible for a party to call a witness from the opposing side and to treat him or her as a hostile witness, but warned that the arbitrator should assume responsibility for ensuring that direct examination is proper and that the witness is protected against unfair tactics.[21]

Some arbitrators contend that the employer should be permitted to call the grievant or any other adverse witness, so long as there is no contrary contractual mandate or mutual practice that forbids it.[22] This view is based on the perception of the grievant as the one seeking a remedy and invoking the arbitration process.[23]

The positions of arbitrators on this issue may be classified as follows:[24]

1. Any person present at the arbitration hearing may be called.
2. Neither side may call as a witness a person from the other side.
3. Persons may be called as witnesses for the other side, except grievants in Disciplinary Cases.
4. Under certain limited circumstances the Grievant in a disciplinary case may be called by the employer, but there must be a clear basis for such.[25]

## C. Improperly Procured Evidence

Evidence obtained by a search of an employee's person, locker, desk, or automobile, by clandestine surveillance or by other means that may arguably violate the employee's rights, raises a different

PROCEEDINGS OF THE 35TH ANNUAL MEETING OF THE NAA, 157–64 (Stern & Dennis eds., BNA Books 1983).

[20] PROBLEMS OF PROOF IN ARBITRATION, PROCEEDINGS OF THE 19TH ANNUAL MEETING OF THE NAA, 99 (Jones ed., BNA Books 1967).

[21] *Id.* at 301.

[22] "Procedural Rulings During the Hearing: V. Witnesses From Opposing Sides," ARBITRATION 1982: CONDUCT OF THE HEARING, PROCEEDINGS OF THE 35TH ANNUAL MEETING OF THE NAA, 161 (Stern & Dennis eds., BNA Books 1983). *Accord* Tectum Corp., 37 LA 807 (Autrey, 1961). *See also* Tucson Unified Sch. Dist., 130 LA 1167, 1170 (Bognanno, 2012).

[23] Procedural Rulings, *id.*

[24] These positions were described in *Rohm & Haas Tex.*, 91 LA 339 (McDermott, 1988).

[25] *Id.* at 343. Labor arbitration depends on the lower steps of the grievance procedure to establish the boundaries of the controversy. If a grievant does not cooperate by telling his or her story, the employer may be surprised, leading to delays in the hearing. Calling the grievant as an adverse witness allows the arbitration to proceed expeditiously.